UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| International Fidelity Insurance Company, | Case No. 19-cv-1615 (WMW/HB) |
| Plaintiff, | **ORDER** |
| v. | |
| Oxbow Solar Professionals, Inc.; Morgan Charles Thomas Southard; and Dianne Marie Southard, | |
| Defendants. | |

---

This matter is before the Court on Plaintiff International Fidelity Insurance Company's (IFIC) motion for partial summary judgment. (Dkt. 24.) For the reasons addressed below, IFIC's motion is granted.

## BACKGROUND

IFIC is an insurance company incorporated in New Jersey, with a principal place of business in Newark, New Jersey. Defendant Oxbow Solar Professionals, Inc. (Oxbow) is incorporated in Minnesota with its principal place of business in Minnesota. Defendant Morgan Charles Thomas Southard is the chief executive officer of Oxbow and he, together with Defendant Dianne Marie Southard, are identified as indemnitors and debtors in connection with the contracts relevant to this matter.

This contract dispute arises from the alleged breach of an indemnity agreement signed by the parties. On or about March 13, 2018, the parties executed a written agreement of indemnity (Indemnity Agreement), which provides that IFIC will act as

surety for Oxbow in the event Oxbow is unable to make payments to Oxbow's contractors. After the parties entered into the Indemnity Agreement, IFIC executed and issued several construction performance and payment bonds on behalf of Oxbow.  Oxbow's contractor, Borrego Solar Systems, Inc. (Borrego), made several claims against the bonds, as did other subcontractors and material suppliers retained by Oxbow.  Borrego and the other subcontractors made claims against the payment bonds, demanding that IFIC satisfy Oxbow's debt.  Following an investigation, IFIC paid $1,451,713.92 to various claimants to settle Oxbow's debt.

The Indemnity Agreement provides that Defendants "shall exonerate, indemnify, and keep indemnified the Surety [IFIC] from and against any and all liability for losses and/or expenses of whatsoever kind or nature" relating to the issuance of bonds to Oxbow's contractors.  Pursuant to the terms of the Indemnity Agreement, after IFIC has made a payment on Oxbow's behalf, IFIC may demand reimbursement, either in cash or collateral, of the amount paid.  The Indemnity Agreement provides that Defendants "shall deposit with the Surety [IFIC] on demand an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to protect it from loss."  Despite IFIC's demand, Oxbow has not reimbursed IFIC for the $1,451,713.92 that IFIC paid on Oxbow's behalf.

IFIC commenced this lawsuit on June 19, 2019, asserting six claims for relief, including breach of contract and contractual indemnification. As relevant here, IFIC moves for summary judgment as to its breach-of-contract and contractual-indemnity claims. IFIC seeks reimbursement for the $1,451,713.92 it paid on Oxbow's behalf as well as $28,500 in legal expenses. Defendants have not responded to IFIC's motion.

## ANALYSIS

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). The nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts [that] create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted). Insurance coverage disputes may be resolved on summary judgment based on a court's interpretation of the disputed insurance policy provisions. *See, e.g.*, *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 860–61 (8th Cir. 2012).

I. **Breach of Contract**

IFIC moves for summary judgment on its breach-of-contract claim, seeking an award of $1,451,713.92 in contract damages.

The interpretation of an insurance policy, including the question of whether a legal duty to defend or indemnify arises, is governed by state law. *See Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013); *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010). General principles of contract interpretation apply to insurance policies. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998).

The goal of insurance policy interpretation is to give effect to the parties' intent. *Nathe Bros. v. Am. Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn. 2000). In doing so, courts construe the terms of an insurance policy as a whole "according to what a reasonable person in the position of the insured would have understood the words to mean," *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977), giving unambiguous language its usual and accepted meaning, *McDonough*, 608 F.3d at 390–91 (citing *SECURA Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320, 325 (Minn. Ct. App. 2008)).

The terms of an indemnity agreement are analyzed under the same standards as those governing contract interpretation. *Am. Druggists' Ins. Co. v. Shoppe*, 448 N.W.2d 103, 104 (Minn. Ct. App. 1989) ("The rules governing the requisites, validity and construction of contracts are applicable to indemnity agreements."). "The elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any

4

conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (internal quotation marks omitted). The right to indemnification of a party who has incurred liability arises upon the breach of duty by the indemnitor. *Altermatt v. Arlan's Dep't Stores*, 169 N.W.2d 231, 232 (Minn. 1969).

The Indemnity Agreement, signed by IFIC and Defendants, requires IFIC to act as surety for Oxbow through the issuance of surety bonds. According to the Indemnity Agreement, "as soon as liability exists or is asserted against" IFIC, Oxbow "shall deposit with [IFIC] on demand an amount of money or other collateral security acceptable to [IFIC]." It is Oxbow's contractual obligation to "exonerate, indemnify, and keep indemnified [IFIC] from and against any and all liability for losses and/or expenses of whatsoever kind or nature" incurred in relation to any surety bonds issued by IFIC.

The record includes evidence establishing the following undisputed facts. IFIC performed its contractual duties by issuing surety bonds on behalf of Oxbow. In doing so, IFIC made a series of payments from the surety bonds, totaling $1,451,713.92, to settle claims made against those bonds by Oxbow's subcontractors. After IFIC notified Defendants of all the payments made on Oxbow's behalf, IFIC demanded that Defendants indemnify IFIC for all liability resulting from these payments and deposit cash or collateral as required by the Indemnity Agreement. Defendants have not deposited cash or provided collateral as IFIC demanded. Nor have Defendants indemnified IFIC. As such, Defendants have breached the terms of the Indemnity Agreement.

In summary, a contract was formed, IFIC satisfied the conditions precedent to demand Oxbow's performance, and Oxbow has failed to perform its contractual obligations. Accordingly, IFIC is entitled to partial summary judgment as to its breach-of-contract claim.

## II.     Contractual Indemnity

IFIC also seeks summary judgment as to its claim for contractual indemnity.

"The primary goal of contract interpretation is to determine and enforce the intent of the parties." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). When a contractual provision is clear and unambiguous, a court will not rewrite, modify, or limit its effect "by a strained construction." *Id.*

Under the Indemnity Agreement, Defendants have a contractual duty to indemnify IFIC for all liability relating to the payment of Oxbow's debt. The Indemnity Agreement provides that Defendants "shall exonerate, indemnify, and keep indemnified the Surety [IFIC] from and against any and all liability for losses and/or expenses of whatsoever kind or nature" incurred in relation to any surety bonds issued by IFIC. The Indemnity Agreement is unambiguous as to Oxbow's obligation to indemnify IFIC for all liability related to the issuance of surety bonds. But the record undisputedly establishes that, although IFIC demanded that Defendants indemnify IFIC for all liability resulting from its surety payments, Defendants have not indemnified IFIC.

Accordingly, the Court grants IFIC's motion for partial summary judgment as to IFIC's contractual-indemnity claim.

6

### III. Attorneys' Fees and Costs

IFIC also seeks $28,500 in attorneys' fees and costs pursuant to the Indemnity Agreement. Attorneys' fees are recoverable if specifically authorized by contract. *Van Vickle v. C. W. Scheurer & Sons, Inc.*, 556 N.W.2d 238, 242 (Minn. Ct. App. 1996). Here, the Indemnity Agreement provides:

> [Defendants] shall exonerate, indemnify, and keep indemnified the Surety [IFIC] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest*, court costs and the cost of services rendered by counsel* . . . ) . . . from and against any and all such losses and/or expenses which the Surety [IFIC] may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the [Defendants] to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

(Emphasis added.) Because the attorneys' fees that IFIC incurred are a direct result of Defendants' failure to comply with the Indemnity Agreement, IFIC is contractually entitled to attorneys' fees.

Before awarding attorneys' fees, the Court must determine if the proposed fees are reasonable. In Minnesota, courts employ the lodestar method to determine a reasonable attorneys' fees award. *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 620–21 (Minn. 2008) (applying the method set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). In doing so, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate. *Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 628 (Minn. 1988). When determining a reasonable hourly rate, a court does not automatically

accept the rate proffered by the attorney. *Gopher Oil Co. v. Union Oil Co. of Cal.*, 757 F. Supp. 998, 1008 (D. Minn. 1991). Rather, a court considers "the ordinary fee for similar work in the community." *Id.* The locale of the district court is the relevant legal community when determining whether an attorney's hourly rate is in line with that of the community. *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 711 F. Supp. 2d 991, 1009 (D. Minn. 2010), *aff'd*, 650 F.3d 1139 (8th Cir. 2011). It is a fee applicant's burden to establish entitlement to an award with documentation as to the nature of the work and the appropriateness of both the hourly rates and the number of hours expended. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

    **A.**    **Reasonableness of the Hourly Billing Rates**

To support its request for attorneys' fees and costs, IFIC provides the declaration of Robins Kaplan LLP attorney David C. Veis and the billing statements for the legal work performed to enforce the Indemnity Agreement. IFIC seeks $28,500 in attorneys' fees and costs. In support of this amount, the billing statements reflect that IFIC incurred legal fees from its counsel based on hourly rates from $275 to $585 for counsel and $160 for paralegals. Based on its experience and knowledge of prevailing market rates in the community, the Court concludes that the hourly rates charged by IFIC's counsel are consistent with the prevailing market rates in the area. *See, e.g.*, *North Dakota v. Heydinger*, No. 11-cv-3232 (SRN/SER), 2016 WL 5661926, at *16–*17 (D. Minn. Sept. 29, 2016) (finding that hourly rates ranging from $225 to $515 for attorneys and $175 to $230 for paralegals were reasonable); *State Bank of Bellingham v. Bancinsure, Inc.*, No.

8

13-cv-0900 (SRN/JJG), 2016 WL 3951068, at *2 (D. Minn. July 19, 2016) (approving hourly rates ranging from $270 to $550 for attorneys).

### B.   Reasonableness of Hours Expended

IFIC seeks reimbursement for the 88.4 hours of work performed by its counsel and their paralegals in this matter to recover approximately $1.5 million.  The legal services for which IFIC incurred fees include drafting and filing the complaint, drafting the motion for partial summary judgment and the accompanying documents, reviewing discovery, researching the applicable law, and attorney-client correspondence.  After careful review of the billing records submitted from Robins Kaplan LLP, the Court concludes that the tasks performed by IFIC's counsel were reasonable and necessary to successfully prosecute this matter.  Accordingly, an award of $28,500 in attorneys' fees and costs is warranted.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff International Fidelity Insurance Company's (IFIC) motion for partial summary judgment as to IFIC's breach-of-contract and contractual-indemnity claims, (Dkt. 24), is **GRANTED** as follows:

    a. Defendants shall pay IFIC $1,451,713.92 in contract damages and $28,500 in attorneys' fees and costs, for a total judgment of $1,480,213.92.

      b. Defendants shall indemnify IFIC pursuant to the terms of the Indemnity Agreement.

Dated: March 15, 2021                  s/Wilhelmina M. Wright
                                                               Wilhelmina M. Wright
                                                               United States District Judge